No. 43,426

In the Matter of the Estate of Ida Pearl Winters, Deceased. OTA ROBIE, *Appellant,* v. H. H. SNYDER, Administrator, AGNES MC-CAULEY, DOROTHY BAUMAN, FLOSSIE J. SCHIPP, ALICE ARTZBERGER, HARRY S. M. BATES, JR., DOROTHY RUSSEL, LIZZIE ROADY, STELLA MALONEY, VIRGINIA JOHNSON and KENNETH SHRIVER, *Appellees.*

(389 P. 2d 818)

Opinion filed March 7, 1964.

*Emmet A. Blaes,* of Wichita, argued the cause, and *Charles E. Rauh, Ralph J. Thorne* and *John A. Robinson,* all of Hutchinson, were with him on the briefs for the appellant.

*Arthur C. Hodgson* and *Granville M. Bush,* both of Lyons, argued the cause, and *Richard L. Ankerholz,* of Lyons, and *Karl V. Shawver, Jr.,* of Paola, were with them on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment denying specific performance of an alleged oral contract to bequeath and devise a substantial portion of a decedent's estate to the claimant for services and companionship during the decedent's life.

The action was commenced in the probate court with the filing of a petition in the estate of Ida Pearl Winters, deceased. The matter was then certified to the district court for trial. It was stipulated before trial that as an alternative to the relief prayed for in the petition, the court might grant relief on the basis of *quantum meruit* if the evidence so justified.

It is conceded by all parties that factual issues only are presented. The testimony was quite voluminous. The facts can best be presented by paraphrasing the findings of the trial court.

Mrs. Ida Pearl Winters, the decedent, was a gregarious person, fond of children, playing cards, visiting with her friends and traveling. She loved the companionship of friends and relatives. When trips were made she usually paid for all the transportation, room and meals, although occasionally others with her paid some of their own expenses. She was also a demanding person, requesting a great deal of personal attention from her employees, friends and relatives. She was usually very close mouthed about her business affairs and her estate, but had expansive moods when she would make spur of the moment declarations concerning what she intended to do with certain items of her property or other expressions of intent with regard to her estate. She told several relatives and friends, including claimant, that they were to receive certain things or were to be remembered in the disposition of her estate.

Mrs. Ota Robie, the claimant, took several trips with Mrs. Winters as did various other people. On these trips Mrs. Winters paid all or most of the expenses including the claimant's. On a few occasions the claimant paid her travel expense one way when visiting Mrs. Winters at Lyons, Kansas. The claimant called Mrs. Winters occasionally and exchanged occasional visits with her. During the period following Mr. Winters' death, there would be periods of

from four to five months when the claimant would not visit Mrs. Winters. During the period between the deaths of Mr. Winters and Mrs. Winters, many others came to visit Mrs. Winters. During this same period Mrs. Winters took many trips and visited many friends and relatives.

Walter "Peck" Sauers, a longtime employee, waited on Mrs. Winters, taking care of her every need, in sickness as well as health, and was as devoted to her as was humanly possible for one person to be. His relation to her was the same as that of a mother and son. He ran the station, cooked most of the meals, looked after the cabin camp, dressed Mrs. Winters' foot, gave her medicine, drove her on trips, lived in the same house with her and did all things required by her.

The claimant had six small children which required her attention and limited the time she could spend with Mrs. Winters. She told those staying nights with Mrs. Winters at the hospital that she could not do so because she had a family which required her attention.

Mrs. Winters executed a will in longhand which has been admitted to probate in Rice County, Kansas. The will was executed and signed approximately three or four months after the alleged oral contract. In the will Mrs. Winters mentions only Walter Sauers and Chester Imel.

Mrs. Robie claimed to represent her mother at the time the personal effects of Mrs. Winters were being divided. She later informed her mother that she made the claim for the bulk of the estate for the benefit of her mother as well as herself. She made a search of the records at the hospitals after Mrs. Winters' death telling one hospital administrator that she intended to make a claim for her services since there wasn't any will and she deserved something.

On one or more occasion, claimant was heard to express herself as determined to get a share of the Winters' estate. It was not until after claimant discovered that there was no will covering the bulk of the estate that she determined to put in a claim for it.

The value of the estate was appraised at $165,898.66. The appraised value of the share willed to Walter Sauers and Chester Imel was $19,500.00 plus inventory of the stock in trade at the filling station valued at $2,000.00. The claimant states that she believes this should go to Sauers and Imel and is not claiming it.

This leaves the appraised value of the interest sought by claimant at $144,398.66.

The trial court concluded:

"1. That the claimant, Ota Robie, is not entitled to specific performance of an alleged oral contract with the decedent, Mrs. Ida Pearl Winters, for the following reasons:

"A. There was not convincing evidence that a contract was in fact made.

"B. That except for the testimony of claimant and her husband, the testimony of the witnesses who heard the deceased make references to her intent and purpose were testifying to casual statements inconclusive in their nature, permitting an inference either way and quite possibly misunderstood. Such statements are insufficient in themselves to establish a making of a contract and amount only to statements of future intent or desire. That the testimony of claimant and her husband must, in a case of this nature, be carefully weighed in consideration of their natural interests. That the claimant's testimony must be considered in the light of her inconsistent actions from the time of the first hospitalization in Kansas City through to the filing of her claim herein. That the testimony of claimant's husband must be considered in the light of the bargaining threats made to witness Sauers.

"C. The facts and circumstances relied upon by the claimant consisted of certain trips by claimant, phone calls, and visits, and the repetition of oral statements or fragmentary parts thereof made by the deceased. This evidence was not sufficient to raise a convincing implication that a contract was made. Most of the evidence of claimant was vague and uncertain, so that it could not be said with any degree of certainty whatsoever that the decedent was referring to a contract rather than a mere statement of future intent or desire. Statements made by the decedent to Mrs. Furbeck, Mrs. Toombs, and Mrs. Looney shortly before her death definitely show the decedent did not feel she had any contract with the claimant.

"D. That the claimant made statements before and after the death of Ida Pearl Winters inconsistent with the existence of an alleged contract to devise property in consideration for services.

"E. Even if the Court were to consider that there was sufficient evidence of a contract and its terms thereof, the alleged contract herein would have been grossly inequitable and unjust. Equity will not decree specific performance of a contract when the inequality of consideration, as in this case, is so great as to shock the conscience of the Court.

"F. In order to obtain specific performance, there must also be established a consideration of such an exceptional character or such peculiar value to the promisee that the value thereof is not subject to pecuniary estimate. In this case, the Court finds that even if the contracts [contacts] the claimant had with the decedent over the years were found to be in the nature of services to decedent rather than for the temporary mutual enjoyment of both parties, then and in that event the value thereof would be subject to ascertainment and recovery in quantum meruit.

"2. That the contacts between claimant and decedent were in the nature of mutual personal enjoyment rather than services by one to the other and hence, recovery on the basis of quantum meruit is denied."

The appellant contends that "the trial court either decided the case on an incorrect conception of the law or acted arbitrarily in disregarding adequate competent uncontradicted evidence."

At the outset we are confronted with a well established rule of law governing the review of factual issues presented on appeal. This court may set aside an affirmative finding where the record shows there was no evidence to support it. However, a negative finding is seldom set aside if the evidence is limited in quantity and its weight and credibility may be questionable, or if the evidence may be disregarded for any reason.

The court had the question under consideration in the case of *In re Estate of Johnson,* 155 Kan. 437, 125 P. 2d 352, covering facts quite similar to the present case and stated:

"Plaintiff contends this court has frequently reversed a trial court on findings of fact where there was no evidence to support the findings made. That is true where there were affirmative findings of fact unsupported by the record. Here, however, we have a negative finding of fact—a very different thing. (*Potts v. McDonald,* supra [146 Kan. 366, 69 P. 2d 685] p. 369.) Here the court, after hearing all of the evidence, was convinced the claim should not be allowed, and so found. The court quite apparently either did not believe the testimony offered in support of plaintiff's claim or the evidence was not sufficiently clear and convincing to persuade the court concerning the validity of the claim.

"Appellate courts cannot nullify a trial court's disbelief of evidence (*Kallail v. Solomon,* 146 Kan. 599, 602, 72 P. 2d 966), nor can they determine the persuasiveness of testimony which a trial court may have believed. The appearance and demeanor of a witness, which appellate courts never have the opportunity of observing and which cannot be transmitted to the cold records of this court, may be, and sometimes are, far more persuasive than positive testimony." (p. 439.)

We have carefully reviewed the record and must conclude that the evidence presented falls well within the rule above announced.

The appellant relies on the case of *In re Estate of Wert,* 165 Kan. 49, 193 P. 2d 253, where it was held:

"The record examined in consolidated cases asserting an oral contract with deceased persons wherein a widow of a son of the deceased parties alleged that they agreed to leave her the son's share of their estate in the event of his death if she would remain a widow as long as they lived and render certain services to them, and *held:* (1) The trial court either decided the cases upon an incorrect conception of the law or acted arbitrarily in disregarding adequate competent, uncontradicted evidence; (2) this court is unable to order judgment for an appellant in the absence of findings upon related and essential mixed questions of fact and law which are not determined by the trial court on conflicting evidence; (3) in the above circumstances, the appellant is entitled to new trials." (Syl. 1.)

In an opinion on rehearing, *In re Estate of Wert,* 166 Kan. 159, 199 P. 2d 793, it was again stated in the syllabus:

"Upon a reëxamination of the testimony in these cases, it is *held:* (*a*) That there is no substantial conflict in the evidence concerning the existence of an oral contract to leave the widow of decedents' son, at the death of the deceased son's surviving parent, one-half of the joint estate of such parents provided such widow did not remarry during the lifetime of the parents; (*b*) that performance of the conditions of the oral agreement was established by the evidence.

"Where the existence of an oral contract, its terms, and performance thereof have been fully established and there is no substantial conflict in the evidence, this court may reverse the judgments below and direct entry of judgments establishing such contract and its performance."

It will be noted that in the Wert case there was no substantial conflict in the evidence. The evidence pointed to but one conclusion, the existence of the oral contract. There was no substantial evidence introduced which in any way contradicted the testimony of the claimant's corroborating witnesses.

Without making an extended review of the evidence in the present controversy, it may be said that the record amply supports the trial court's conclusion that the testimony of the many witnesses, other than that of the appellant and her husband, as to the intent and purpose of Mrs. Winters was as to casual statements inconclusive in their nature. The conduct and statements of the appellant were inconsistent with the existence of the alleged contract.

The husband of the appellant was the only witness that testified as to a definite contractual arrangement. The court had a right to consider the husband's natural interest in the controversy, and certainly must have been influenced by the bargaining threats which he made to the faithful employee, Sauers, to the effect that if Sauers did not support appellant's contention they would also claim that which was devised to him by the handwritten will.

Appellate courts cannot nullify a trial court's disbelief of evidence, nor can they determine the persuasiveness of testimony which a trial court may have believed.

The rule covering the factual question now before us was well stated in the case of *In re Estate of Guest,* 182 Kan. 760, 324 P. 2d 184, at page 766 of the opinion:

". . . Time after time, in fact, every month, this court is called upon to repeat the familiar rule of appellate review to the effect that where findings are attacked for insufficiency of the evidence this court's power begins and ends with a determination as to whether there is any competent sub-

stantial evidence to support them; that it has no power to judge the value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom, and that even though there is evidence to support a contrary finding, nevertheless, a finding based on competent substantial evidence will not be disturbed on appeal. For a thorough discussion of this proposition we call attention to what was said in *Bruington v. Wagoner*, 100 Kan. 439, 164 Pac. 1057."

Appellant contends that "if the right to specific performance was not convincingly proven, the trial court clearly erred in refusing a recovery on the basis of quantum meruit."

What has already been said disposes of this contention. The record is void of evidence to establish any specific services or the value of any services rendered by the appellant to Mrs. Winters.

The trial court concluded: "That the contacts between claimant and decedent were in the nature of mutual personal enjoyment rather than services by one to the other and hence, recovery on the basis of quantum meruit is denied."

The evidence tends to support the conclusion.

The testimony as to the rather short and infrequent visits which the appellant had with Mrs. Winters did not indicate services for which payment would be expected. The evidence clearly establishes that the appellant was hampered in being with Mrs. Winters because she had six small children requiring her care and attention.

The appellant calls our attention to *McEnulty v. McEnulty*, 146 Kan. 198, 69 P. 2d 1105 where the court denied specific performance for the reason that the contract was not sufficiently established and then proceeded to make an equitable award to the claimant to compensate him for his services.

Our attention is also called to the following statement in 57 Am. Jur., Wills, § 179: ". . . If services are rendered to a person at his request, made under such circumstances that a promise to compensate therefor may be implied, he is liable therefor, even though they were rendered in expectation of a legacy. . . ." (p. 158.)

We have no quarrel with the authorities cited by appellant. However, they do not meet the problem which confronts the appellant in this controversy. Appellant's difficulty is the lack of evidence to establish that any specific services were rendered for which compensation could be or should be expected.

What has been said renders unnecessary a consideration of the

question of the sufficiency of the evidence to establish an agreement or understanding to overcome the presumption that services rendered between parties in a family relationship are gratuitous.

The judgment is affirmed.

APPROVED BY THE COURT

FONTRON, J., not participating.