No. 43,732

In the Matter of the Estate of Mabel May Curtis, a/k/a May Curtis, Deceased. DERWARD O. LAWSON, *Claimant-Appellant,* v. CHARLES H. BURLINGAME, Administrator, *Appellee.*

(394 P. 2d 59)

Opinion filed July 14, 1964.

*Steven P. Flood,* of Hays, argued the cause, and *Clayton S. Flood,* of Hays, and *L. M. Kagey,* of Wichita, were with him on the briefs for the appellant.

*Delmas L. Haney,* of Hays, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is an appeal from a judgment disallowing the claim of the appellant, Derward O. Lawson (sometimes referred to as Derward), against the estate of Mabel May Curtis, a/k/a May Curtis. The claim is predicated on an alleged oral contract wherein it is claimed the decedent agreed to give Derward, upon her death, a farm near McCracken, Kansas, in return for Derward's forbearance to file a claim against the estate of Fred Curtis, decedent's former husband who died in 1951.

The evidence disclosed that claimant was abandoned by his parents early in life and was taken into the Curtis home when he was about nine years old. He lived as a member of the Curtis

family, working on the farm and being educated by the Curtises. A few months after graduating from Kansas University in 1939, claimant left the farm and went to Texas where he was employed until entering the army in World War II.

In September, 1933, before going on a trip to Chicago, Fred handed claimant a paper, reading as follows:

"September 30-1933

"I Fred Curtis of sound mind and good health, staring (sic) to the fair at Chicago and in case of an acident (sic) which might kill me and my wife (May) It is my desire that Derward Lawson shall recieve (sic) out of my worldly belonings (sic) the farm machinery and wheat crop and $1,000.00 out of my life insurance so he can start in life like a man and the rest of my property to pay my expenses and then be divided eaven (sic) between Mays folks and mine with Charlie Burlingame to look after Mays share and Henry to look after mine and that it is my last request that Henry Curtis shall see that this is settled this way. Signed this 30 day of Sept 1933.

"FRED W. CURTIS"

This instrument was found by the trial court to have been the basis of whatever claim Derward may have had against the Fred Curtis estate.

Upon his discharge from the army in April, 1946, claimant returned to the Curtis farm, although eligible to return to his former employment, and he and Fred operated the farm together under varying arrangements. On November 21, 1947, Fred had a stroke and much of the farm management fell to Derward, who thereafter paid the expenses of operation, and was reimbursed therefor by either Fred or his wife. In August, 1950, Fred sold the farm equipment, keeping the proceeds, and the farming operations then ceased.

Fred Curtis died in January, 1951, and claimant attended the funeral from Wichita, where he was then living. At the funeral, claimant had a conversation with May. This was the time when claimant alleged his agreement was made with Mrs. Curtis.

Derward continued to see May occasionally after the funeral, except for the time he was in the Korean conflict. He married in March, 1958, and he and his wife visited with May on at least two occasions before she died, intestate, in January, 1962.

To support his claim, Derward called J. L. McGaughey, who had worked for Fred in 1938. He testified that after Fred's death he went to May to get Derward's address and during the conversation May said, ". . . that she told Derward or, asked him, if he wouldn't press any claim against Fred's estate, which they

had promised and hadn't given him that she would in her Will, when she died leave him that half-section of land."

Mrs. Maude Hoffer, a friend of Mrs. Curtis, testified that May always told her ". . . that she was going to leave the land to Derward because he made no claims against the estate, and the money they had promised him, and so she was going to leave him the land," referring to the Curtis' half section.

Claimant's wife testified that in October, 1958, May said, ". . . The farm is going to be his (Derward's), someday, you know." Francis McGaughey, postmaster at McCracken, testified that Mrs. Curtis told him many times (but only two that he could recall) ". . . That (the farm) belongs to Derward." La Verne Fletcher, May's tenant, testified that once when he asked why she didn't sell the farm and buy more rental properties, ". . . in the process of the conversation Derward Lawson was brought up, not to the place I would say . . . I know he was mentioned at this time and the land was concerned there."

Two lawyers testified for the defense, both over claimant's objection. E. A. Schwartzkopf, a LaCrosse attorney, had prepared two wills for Mrs. Curtis, the first one dated February 21, 1951, and the second dated February, 1952. In neither draft did May leave the land to Derward, but she made other provisions for him. Mr. Schwartzkopf had sent the originals of both drafts to Mrs. Curtis but did not know whether she had executed either one.

In February, 1961, Mrs. Curtis consulted Donald L. Buster, a lawyer at McCracken, and he prepared a will in which claimant was left a one-third interest in the land. Mr. Buster testified that May had never signed this will.

The testimony of the other two defense witnesses was essentially negative in character and need not otherwise be noted.

The trial court made extensive findings of fact which reflect, in substance, the foregoing facts. Conclusions of law were also entered, which include the following:

"This Court has concluded that as a matter of law the evidence of the claimant Derward O. Lawson, was not sufficiently clear and convincing to establish an oral contract between the decedent and himself and that the enforcement of the alleged oral contract, if it had been definitely proven and established, would be inequitable. . . .

"This Court does not believe the claimant established the making of the oral contract by clear and convincing evidence, by direct evidence or by corroborating testimony or by evidence from which a reasonable inference should arise that the oral contract was made."

After claimant's post trial motions were overruled, the present appeal was properly perfected.

Essentially three questions are raised by appellant in his brief: First, was it error to admit copies of the three wills prepared for Mrs. Curtis; second, did the trial court err in refusing to find that an oral contract between Derward Lawson and Mrs. Curtis had been established; and third, did the court err in finding that such a contract, if established, was inequitable?

Turning to the first question presented, it is to be noted that the first will, prepared by Mr. Schwartzkopf after consulting with Mrs. Curtis, was dated February 21, 1951. This date might well seem to have significance, for it was only a month after Fred Curtis' funeral, at which time May was alleged to have agreed with Derward to leave him the farm. Both this will and the two later wills follow a consistent pattern in their silence as to any agreement with Derward, and in their omission of provisions leaving him the farm.

It appears to us that while the evidence concerning the drafting of the three wills may be of a somewhat negative nature, nevertheless it is not altogether lacking in probative value. This court has held that the execution of a will itself, and the terms thereof, may be evidence of an agreement that the will be made. (*Nelson v. Schoonover*, 89 Kan. 388, 131 Pac. 147; *Lewis v. Lewis*, 104 Kan. 269, 178 Pac. 421; *In re Estate of Dull*, 184 Kan. 233, 336 P. 2d 435.) No reason has been suggested why the converse should not also be true, *i. e.*, that preparation of a series of wills whose provisions are not consistent with an agreement alleged to have been made may be some evidence rebutting the existence of any such agreement.

We believe the evidence was relevant within the rule stated in 1 Jones, Evidence, § 154 (5th ed.):

"If direct evidence cannot be produced, proof may be made of any and all circumstances which have a rational or logical tendency to show the truth as to the disputed matter." (pp. 275, 276.)

The appellant's objection to the evidence on the ground of privilege is without merit. The privilege is that of the client and may be waived by him. When the client is dead, waiver may be effected by his administrator. (3 Jones, Evidence, § 836 [5th ed.].)

We turn now to consider whether the court erred in finding that the alleged contract was not established under the evidence. It should be borne in mind that the present action is based upon an

alleged agreement with May Curtis, not with Fred, and that it allegedly concerned the half section of farm land, not farm machinery, wheat, or cash. The distinctions are important.

In considering this issue, we are met at the start by two principles firmly embedded in the law. First is the requirement that an agreement to establish and enforce an oral contract to will or devise property to another for a consideration to be furnished during the decedent's lifetime must be established by clear, convincing and satisfactory proof, supplied either by direct evidence or by evidence of facts and circumstances sufficient to raise a convincing implication. (*In re Estate of Dull,* supra; *In re Estate of Duncan,* 186 Kan. 427, 350 P. 2d 1112; *Walter v. Warner,* 298 F. 2d 481.)

The second rule is expressed *In re Estate of Winters,* 192 Kan. 518, 389 P. 2d 818, as follows:

"An appellate court will seldom set aside a negative finding of a trial court if the evidence is limited in quantity and its weight and credibility may be questionable, or if the evidence may be disregarded for any reason. (Syl. 1.)

See also *Potts v. McDonald,* 146 Kan. 366, 69 P. 2d 685; *In re Estate of Johnson,* 155 Kan. 437, 125 P. 2d 352.

Confronted by the rule first stated, the trial judge, after canvassing the evidence, measuring its reliability, and assessing the weight and value to be accorded it, reached the conclusion that appellant had failed to establish his case by the required quantum of proof. We believe that such a conclusion may not be characterized as unwarranted by the evidence. When the record is measured by the second rule above stated, we find nothing which would justify setting aside the trial court's ruling.

It is true that the witness, J. L. McGaughey, testified that Mrs. Curtis told him that she "told" Derward or "asked" him if we would not press the claim against Fred's estate she would leave him the land in her will, while Mrs. Hoffer stated on the stand that Mrs. Curtis always told her she was going to leave Derward the land because he made no claim against the estate. The testimony of these witnesses, and of claimant's other witnesses, might possibly be interpreted as evidencing merely an intent on May's part to do something for Derward in the future, rather than an agreement already made with him.

But whatever such testimony might be said to evidence, if credited, it was the function of the trial judge who saw the witnesses and observed their manner and demeanor on the stand, to assess

the weight and value of their testimony. And such he must do in the light of all the other facts and circumstances in evidence and occurring at the trial. It was said in *In re Estate of Johnson*, supra:

"Appellate courts cannot nullify a trial court's disbelief of evidence (*Kallail v. Solomon*, 146 Kan. 599, 602, 72 P. 2d 966), nor can they determine the persuasiveness of testimony which a trial court may have believed. The appearance and demeanor of a witness, which appellate courts never have the opportunity of observing and which cannot be transmitted to the cold records of this court, may be, and sometimes are, far more persuasive than positive testimony." (pp. 439, 440.)

Although a court, as the trier of the facts, may not refuse arbitrarily or capriciously to consider the testimony of any witness, neither is it obligated to believe or accept as true the testimony of any witness, even though it be uncontradicted. (*Briney v. Toews*, 150 Kan. 489, 95 P. 2d 355; *Johnson v. Soden*, 152 Kan. 284, 103 P. 2d 812.) If the trial court, in its honest opinion, considers testimony to be unreliable it need not give that testimony effect (*In re Estate of Johnson*, supra). As it was so aptly put in *Kallail v. Solomon*, supra:

". . . The disbelief may have resulted from the demeanor of defendant and his witnesses, and from the very nature of the evidence produced by them. . . ." (p. 602.)

The record is replete with circumstances which the trial court may well have taken into account in considering the weight and trustworthiness of claimant's evidence. No good purpose would be served here by enumerating them; they will suggest themselves to anyone who examines the record.

The appellant relies strongly on *In re Estate of Wert*, 165 Kan. 49, 193 P. 2d 253, in which this court set aside the trial court's ruling that the evidence was insufficient to support a contract. The factual situation existent in that case is clearly distinguishable from that presented here. Factors are perceived in this case which the trial court may well have felt affected adversely the weight and credibility of claimant's evidence which were not shown to have been present in the Wert case. The character, caliber, quality and quantity of the positive evidence found in the two cases is substantially different. Without attempting any detailed comparison, we are constrained to observe that the Wert decision is not of controlling effect under the circumstances confronting us in the instant case.

Foregoing further discussion, we find it sufficient to say that under the evidence presented in this record, the court's finding that claimant failed to establish a contract by clear and convincing evidence may not be overturned.

The conclusion we have reached makes it unnecessary to consider whether the agreement, had it been established, would be inequitable.

The judgment is affirmed.

ROBB, J., dissents.