No. 44,787

John J. Riling, Executor of the Will and Estate of Mary F. Priest, *Appellant*, v. Dan O. Cain, *Appellee*.

(428 P. 2d 789)

Opinion filed June 10, 1967.

*Eugene C. Riling*, of Lawrence, argued the cause, and *John J. Riling*, of Lawrence, was with him on the brief for the appellant.

*M. D. Bartlow*, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: The dispute in this lawsuit centers upon who is entitled to the 1964 rent from a Douglas County farm: the plaintiff, John J. Riling, as Kansas executor of the Mary F. Priest estate, or the defendant, Dan O. Cain, as purchaser of the farm from Mrs. Priest's devisees. The rent was paid to the purchaser, Cain, by the tenant who farmed the land, and the executor, Riling, has sued to recover the same on behalf of the estate.

The action was tried to the court which, after making findings of fact and conclusions of law, entered judgment for the defendant. The plaintiff has appealed. The parties will be designated respectively as plaintiff, or Riling, and defendant, or Cain.

From the findings, which are not challenged, and the evidence of record, we glean the following facts: In November, 1962, Mrs. Priest, a resident of California, died testate in San Diego. In her will she devised four quarter sections of land in Douglas County to two nephews and to the trustees for the children of a deceased niece. At the time of Mrs. Priest's death, this land was farmed by John Inloes, a sub-tenant of the lessee, a Mr. O'Connor.

Mrs. Priest named a California bank as executor of her California estate and John J. Riling as executor of the Kansas property, and they were so appointed. The will directed the executors to pay all taxes from the residuary estate and empowered them to sell or lease estate property subject to such confirmation or authorization as the law required.

Early in 1963, Cain approached Riling with reference to buying the farm. Negotiations were thereafter undertaken between Cain and the devisees, who lived in California, which culminated in a contract dated April 9, 1963, for sale of the land to Cain for $85,000. Riling prepared the contract as attorney for Cain and the devisees, and also prepared deeds running to Cain. The contract was signed by Cain, by the two nephews of Mrs. Priest and by the trustees for the children.

So far as is here material, the contract provided that Cain was to escrow $8,500 with the Lawrence National Bank and should pay the balance of the purchase price, amounting to $76,500 upon delivery of merchantable title; that the two nephews were to place their deeds in escrow with the bank, and the trustees should convey their interest to Cain on final settlement of the Priest estate; and that abstracts showing merchantable title should be furnished Mr. Cain, brought to date within ten days from closing the estate.

The contract further provided that Cain should receive the landlord's share of all crops or revenues derived from the farm for 1963 and that he should pay the 1963 taxes, while the sellers were to pay taxes for prior years. No provision was included for disposition of the rents or payment of the taxes for 1964 and subsequent years.

After the contract was signed, and the deeds prepared, Riling accompanied Cain to the bank, where the papers were escrowed, and

Cain put up $8,500. Riling then took Cain to the agent who had written the insurance on the buildings and had an indorsement prepared showing Cain's interest.

In the spring of 1964, the plaintiff filed his petition for final settlement and published notice of hearing. However, the estate was not closed at that time for the reason that federal estate tax clearance had not been received. We were advised on oral argument that the estate is still open although tax clearance has been obtained.

Cain leased the land to Inloes for 1964 and received the landlord's share of the rents and A. S. C. payments for that year. Cain also made extensive repairs to improvements, increased the insurance and paid the increased premium, collected for at least one insured loss and in November, at Riling's request, paid the first half of the 1964 taxes.

At no time in 1964 was demand ever made by Mr. Riling for any part of the revenues for that year. However, in late March, 1965, at the instigation of the California bank, Riling sent a letter asking Cain to send him his check for the 1964 rents. Cain declined to pay and this lawsuit followed.

The plaintiff raises eight points. Taken together they boil down to this proposition: that under the provisions of K. S. A. 59-1401, he, as executor of the Kansas estate was entitled to possession of the farm during the period of administration and was required to collect the rents therefrom until the estate was settled. The trial court rejected this contention, and in this we believe the court was correct.

K. S. A. 59-1401, on which Riling bases his claim to the 1964 rents from the Kansas real estate, reads as follows:

"The executor or administrator shall have a right to the possession of all the property of the decedent, except the homestead and allowances to the surviving spouse and minor children. He shall marshal all tangible personal property owned by the decedent located in the state of Kansas and all intangible personal property owned by the decedent wherever located, either directly or by ancillary administration, and shall within one year from the date of death take possession of all tangible personal property located in this state and all intangible property wherever located, the same to be held, administered and finally distributed as provided by law. He shall pay the taxes and collect the rents and earnings thereon until the estate is settled or until delivered by order of the court to the heirs, devisees, and legatees. He shall keep in tenantable repair the buildings and fixtures under his control and may protect the same by insurance. He may by himself, or with the heirs or devisees, maintain an action for the possession of the real estate or to quiet title to the same."

It will be noted that this statute has dual provisions pertaining to the possession of estate property by an executor or an administra-

tor: One, that he shall have *the right to possession* of *all* the decedent's property; the other, that *he shall take* possession of all *personal property*. The language used thus distinguishes real from personal property, *permitting* possession to be taken of the former, while *requiring* that possession be taken of the latter.

This court pondered the meaning of 59-1401 as it relates to the possession of real estate by an administrator in *Peterson v. Peterson,* 173 Kan. 636, 251 P. 2d 221. In that case we held that a partition action could be maintained by a cotenant against the heirs of a deceased cotenant even though the estate of the latter was in process of administration, but rejected a conclusion made by the trial court that the decedent's interest was owned by her heirs *and* her administrator. On this point, the court said:

". . . While the administrator has a right of possession until the estate is settled or until delivery by order of court to the heirs (59-1401), under the first section mentioned, the property passes to the heirs subject only to be taken in a statutory manner for statutory purposes. (*Magaw v. Emick,* 167 Kan. 580, 585, 207 P. 2d 448.)

"Administrators of estates have the right of possession of real property until the estate is settled (59-1401). However, this right is merely permissive and does not exclude the possessory right of heirs until the administrator asserts his right to take possession. On the death of an intestate the lands descend, as at common law to his heirs, who may maintain ejectment against third persons if the administrator has not taken possession; *the administrator takes neither title nor interest* in the land except the mere right to take possession during administration. (2 Bartlett 'Kansas Probate Law and Practice,' Sec. 708, pp. 84, 85; *Black v. Elliott,* 63 Kan. 211, 215, 65 Pac. 215; *Lindholm v. Nelson,* 125 Kan. 223, 229, 264 Pac. 50; 24 C. J. 130, § 594; 33 C. J. S. 1262, § 252.)'" (pp. 639-640.)

Our decision in *Peterson* accords with the view generally held by the courts of this country. In 2 Bartlett, Kansas Probate Law and Practice, § 820, p. 341, the author discusses the obligation of executors and administrators to assume possession of a decedent's real estate under statutes similar to ours, and says:

"In those states having the statute it has been decided that the statute is not imperative, but merely permissive, and that it does not exclude the possessory rights of heirs and devisees; that the right of possession is in the heir or devisee until the executor or administrator asserts his rights and takes possession; that on the death of an intestate the lands descend, as at common law, to his heirs, who may maintain ejectment against third persons, if the administrator has not taken possession; that the administrator takes neither title nor interest in the land except the mere right to take possession during administration, if he sees fit to do so."

In 33 C. J. S. Executors and Administrators, § 257*b.*, p. 1268, the prevailing rule is stated in these terms:

"Only in a proper case is a personal representative under a duty to exercise his right of possession of the realty, as where it is necessary to do so because the personalty is insufficient to meet the debts and claims; and it is only to the extent that the right is actually exercised that the common-law rights of the statutory distributees in the realty are disturbed or impaired. . . . Until it is exercised, it does not constitute an intervening estate in possession as against the heir. . . ."

Numerous cases, both ancient and modern, are cited in support of the foregoing text.

In *Estate of Rieman,* 272 Wis. 378, 75 N. W. 2d 564, a case which involved the allowance of an administrator's account, the court said:

". . . The real estate descends to the heirs or devisees upon decedent's death, and an administrator does not take title thereto. Under some circumstances he may obtain a right of possession. However, he has no duty of possession unless it is necessary to do so for the payment of debt or administration expense. It is plain that if he does not take possession, he is under no responsibility to find a tenant or collect rents. . . ." (p. 384.)

See, also, *Chapin v. Chapin,* 229 Mich. 515, 201 N. W. 530; *Ayers Home for Nurses, Inc. v. Fales,* 77 R. I. 37, 73 A. 2d 104; *In re Chyat's Estate,* 60 N. Y. S. 2d 390, Affd., 53 N. Y. S. 2d 503, 269 App. Div. 674.

We believe the rule is rooted in common sense. There would appear to be no compelling reason for an administrator to take possession of real property belonging to the estate, unless such action be necessary to protect creditors, or to secure payment of costs of administration, or to pay legacies chargeable against the real estate. The same holds true so far as an executor is concerned, except where he anticipates exercising a power of sale contained in the will. In *Magaw v. Emick,* 167 Kan. 580, 207 P. 2d 448, we held:

"The only statute authorizing an administrator to sell real estate of his decedent is G. S. 1947 Supp. 9-1410 and under it he may sell real estate only for the purpose of paying reasonable funeral expenses, expenses of last sickness, wages of servants during the last sickness, cost of administration, taxes or debts." (Syl. 1.)

We do not mean to say that if real estate which has not been reduced to possession is later found needed to pay claims or costs the executor would be precluded from then asserting his right to take possession and selling the real estate to pay debts and expenses.

The plaintiff calls attention to the language used in the latter part of K. S. A. 59-1401 which he would now construe as requiring him to collect the rents and earnings from the farm. In our judgment,

an executor is required to collect rents accruing from realty only where he has taken possession of the real estate, not when he has declined to take possession, or waived his right thereto. We might add, in this connection, that had Mr. Riling taken possession of the farm, it would then have been his obligation to keep the buildings in repair, a duty which, under the undisputed evidence, he never did perform. Instead, Riling testified he never looked at the farm after being appointed executor.

The trial court found that when Mr. Riling was appointed, the residue of the estate was more than ample to pay all claims, taxes, expenses of administration and court costs, and this has never been disputed. Under such circumstances, Riling was under no obligation to take the Douglas County farm under his wing, and in our view the evidence was overwhelming that he declined to do so.

We are aware of Riling's testimony that he leased the land to Cain for 1964 on the same basis it had been leased to O'Connor. There is no evidence to support this naked assertion. The court found, on abundant evidence, that Cain rented the land to Inloes for 1964. Mr. Inloes testified that after the 1963 harvest he asked Riling about the next wheat crop and was told that all dealings from then on would be with Cain; that he, Riling, was done. At a later conversation with Riling, Inloes testified he was told that his "dealings after this would be settled up with Mr. Cain," and that since December, 1963, Riling had not asked him for any money, although Inloes was in possession of the land continuously.

The trial court concluded that the defendant was put into possession of the land with the knowledge, acquiescence and participation of the plaintiff. This conclusion was fully justified. Mr. Riling's actions were wholly inconsistent with his present claim that he, as executor, was in possession of the farm during the year 1964.

We believe the inference is clear that both Riling and Cain anticipated the Priest estate would be closed in 1964. To that end, Mr. Riling prepared his final account and petition for final settlement in April, 1964, and published notice thereof. It is fair to assume, also, that it was in anticipation of closing the estate during 1964 that Mr. Riling washed his hands of the farm for that year; that he directed Inloes to deal with Cain; and that he sent the 1964 tax notice to Cain for payment. The claim now made by Mr. Riling that he is entitled to the revenues for 1964 comes belatedly, to say the least.

We find no error, and the judgment of the court below is affirmed.