No. 45,374

In the Matter of the Estate of M. B. Countryman, Deceased, MARIE COUNTRYMAN, *Appellant,* v. DOROTHY LUCAS and WILBER COUNTRYMAN, Executors, *Appellees.*

(457 P. 2d 53)

Opinion filed
July 17, 1969.

*John M. Wall,* of Sedan, argued the cause, and was on the brief for the appellant.

*Harold G. Forbes,* of Eureka, argued the cause, and *Dale L. Pohl,* also of Eureka, was with him on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: M. B. Countryman, a resident of Elk County, Kansas, died testate March 25, 1964. His widow, Marie Countryman, to whom we shall hereafter refer either by name or as plaintiff, filed a petition for allowance of demand against her husband's estate. The executors answered, denying Marie's claim in general and cross claiming for certain sums alleged to be due the estate. The case was tried on all issues in district court, where the claims of both Mrs. Countryman and the executors were allowed in part and denied in part. Marie has appealed, the executors have not.

Mr. and Mrs. Countryman were married in 1943, after executing an antenuptial agreement. Mr. Countryman had two children by a former marriage, Dorothy Lucas and Wilber E. Countryman, who are the executors of his estate and the appellees herein. We will refer to them as defendants, or executors. Marie Countryman had one child by a former marriage, a son, who is not a party to this lawsuit.

Under the antenuptial contract Marie Countryman was to receive (1) two thousand dollars in cash should she survive her husband, (2) the household goods, furniture and fixtures used in the home, and (3) the occupancy, use and income from an 1100-acre farm, known as the Home Place, until her remarriage or her death. The agreement further provided that upon her husband's death, Mrs. Countryman should receive an undivided half-interest in all real estate acquired by the joint efforts of the two parties.

In addition, the contract provided that the property owned by each of the parties at the time of their marriage should remain the separate property of each, and that Marie would execute a written consent to Mr. Countryman's will so long as the will did not conflict with the terms of the agreement.

On December 21, 1943, Mr. Countryman made a will conforming to the agreement, in which he bequeathed his wife the sum of two thousand dollars in cash and the household goods, furniture and

fixtures, and devised the Home Place to her for and during her life-time or until her remarriage, with remainder over to his grand-children. The will left the residue of his property to Mr. Country-man's two children in equal parts. Mrs. Countryman consented to the will in writing, as she had agreed.

During their marriage the Countrymans acquired several pieces of real estate. Those of present concern are as follows: (1) the Richolson farm, (2) the Trail's End farm, (3) the Moline property, (4) the Horn farm, and (5) the Salt Creek farms. The evidence disclosed that the first three properties were purchased from jointly accumulated funds and titles thereto were taken in the names of Mr. and Mrs. Countryman. The last two properties were paid for by Mr. Countryman and titles were taken in his name alone.

In her petition filed in probate court Mrs. Countryman asserted claims against the estate for the following: (1) Statutory allowances as provided in K. S. A. 59-403. (2) Personal property such as horses, saddles, wagons, motor vehicles and other equipment used in ranch operations. (3) The full undivided interest in the Richolson farm. (4) The full undivided interest in the Moline property. (5) A three-fourths interest in Trail's End. (6) A one-half interest in the Salt Creek farms. (7) Pasture rent for cattle pastured on the Home Place after Mr. Countryman's death.

The proceedings were transferred to district court for trial, and in May, 1966, a discovery deposition was taken from Mrs. Country-man. A few weeks later a pretrial conference was held at which the defendants filed a motion for summary judgment, and in June the court issued a memorandum opinion which sustained Marie's claim for statutory allowances, denied her claims for the personal property, for the Richolson farm and for the pasture rent, and set for subsequent hearing her claims against the Moline and Trail's End properties. The court also permitted plaintiff to amend her petition by including a claim for a one-half interest in the Salt Creek farms, which was also set for later hearing.

Some two months later, in August, 1966, a supplemental memo-randum opinion was entered by the court which overruled the motion for summary judgment *in toto* and enumerated, in accord-ance with 60-256 (d), certain material facts as being without sub-stantial controversy. So far as material to this appeal, this supple-mental memorandum will be discussed in more detail later in this opinion.

In due course the case was tried and judgment was entered as of February 7, 1967, to the following effect: Plaintiff was given judgment for the statutory allowances provided in K. S. A. 59-403 and was denied judgment on all other claims, while defendants' cross demands were allowed in part and denied in part. No appeal has been taken by either side from the court's ruling on the cross demands.

The issues raised on appeal mainly relate first, to Mrs. Countryman's claim for pasture rent; second, to her claim for the Richolson place; and third, to her claims against the Moline, Trail's End and Salt Creek properties.

Turning to the first issue, the plaintiff maintains the court erred as a matter of law in denying her claim for pasture rent. The basis for the court's ruling on this claim appears in its supplemental memorandum opinion of August, 1966, enumerating certain facts as being without substantial controversy, as follows:

"The executors had the right to possession of the real estate for the benefit of the estate during the first year after decedent's death and the facts indicate that the claimant-devisee has no basis for claiming rental thereon."

This legal conclusion was subsequently incorporated in the judgment of February, 1967.

It will be recalled that the Home Place was devised to Mrs. Countryman until her death or remarriage. The record reflects that when the executors of the Countryman estate were appointed, about two hundred head of cattle were being pastured on the Home Place, some of which Marie later purchased. It appears that all the cattle remained on the Home Place pasture during the 1965 grazing season, although there was some dispute as to the length of time and as to the circumstances under which they remained there.

The trial court, however, did not determine this issue on the merits. Its ruling was based on a legal conclusion. In this, we are compelled to hold, the court erred.

In the recent case of *Riling, Executor v. Cain,* 199 Kan. 259, 428 P. 2d 789, the plaintiff, as the executor of an estate, filed an action to recover farm rents paid by the tenant during the period of administration to the owner, who had purchased the farm from the devisees. This court, in denying recovery, held:

"Under the provisions of K. S. A. 59-1401, an executor has a right to the possession of real estate owned by the decedent until the estate is settled, but in the absence of a testamentary plan directing otherwise, the executor's right

to possession is permissive only and does not exclude the possessory rights of a devisee until such time as the executor asserts his right to possession. (Following *Peterson v. Peterson,* 173 Kan. 636, 251 P. 2d 221.)" (Syl. ¶ 1.)

We are satisfied with the rule as expressed in the *Riling* case and see no need to pursue the point further. Although the executors argue that Mrs. Countryman should have demanded possession, in case she desired it, our rule is otherwise. As stated in *Riling,* it is the executor who must assert his statutory right to possession. Before leaving this phase of the case, it is only fair to observe that the *Riling* opinion had not been handed down when the present action was heard and decided, and the trial court did not have the benefit of that precedent.

Mrs. Countryman's next claim is this: that about July 31, 1948, she and her husband had a verbal agreement that if she would join in a conveyance of the Horn farm to Mr. Countryman's grand-children, she could have the Richolson farm (one-half of which she already owned). In the supplemental memorandum opinion of August, 1966, the trial court, in specifying what material facts appeared without substantial controversy, included the following language with respect to the Richolson claim:

"No certain verbal agreement existed whereby claimant is entitled to the Richolson property. If such claim did legally exist, it is barred by the Statute of Limitations."

This conclusion was based solely on a discovery deposition taken from Mrs. Countryman in May, 1966, and prior to the time a second deposition was taken.

At the trial, held in February, 1967, Mrs. Countryman attempted to testify further concerning the alleged Horn-Richolson agreement. Her testimony in this regard was rejected by the court. The journal entry recites in part:

"The conversation of the claimant with her deceased husband relating to the Richolson property as related by the claimant in her deposition is so indefinite that the facts as set forth do not satisfy the requirements of a contract as to certainty. Even if the facts established a contract and part performance by the claimant removed the bar of the statute of frauds, the claim is barred by the statute of limitations and claimant's claim for the Richolson property must be denied and judgment rendered in favor of the estate and/or the executors."

It is now claimed the trial court erred in excluding plaintiff's proffered testimony and in denying her claim solely on the basis of the May, 1966, discovery deposition. We think there is merit in this contention.

To review for a moment: a pretrial conference was held April 12, 1966, at which the parties agreed to submit certain questions, and during which the defendants filed a motion for summary judgment. On June 6, 1966, the court granted summary judgment denying Marie's claim for the Richolson place. On August 24, 1966, the court filed a supplemental memorandum opinion setting the summary judgment aside *in toto* and proceeding to enumerate "what material facts are without material [*sic*] controversy." One of the so-called "uncontroverted facts" enumerated was that no verbal agreement existed as to the Richolson property.

Strictly speaking, we believe the court was not enumerating, so far as the Richolson claim was concerned, a fact which was "without substantial controversy." Mrs. Countryman was actively asserting a contract involving the Richolson place while the defendants were just as vigorously denying it. There was continuing controversy as to the contract.

The actual effect of the court's supplemental memorandum opinion, as we view it, was to determine an issue of fact, *i. e.,* whether there was a contract, and in coming to its decision on that issue the court relied solely on the discovery deposition, refusing all other evidence.

We think the trial court may have misconceived the purport of K. S. A. 60-256 (*d*), and assumed that an order made pursuant to that statute was not subject to change or amendment. Subsection (*d*) is a part of the summary judgment statute, and provides as follows:

"If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain which material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the actions as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."

A determination made under 60-256 (*d*) is not a final and appealable judgment, although it is frequently called a "partial summary judgment." (3 Barron & Holtzoff, Federal Practice and Procedure, § 1241, p. 190.) Rather, the determination is a summary interlocutory order as to uncontroverted facts, and is subject to subsequent

revision and modification. (*E. I. Du Pont De Nemours & Co. v. United States Camo Corp.*, 19 F. R. D. 495.) Being interlocutory in character, the federal court on page 498 said that the "adjudication is merely a pretrial determination that certain issues are considered established for the trial of the case, and is similar to the preliminary order under Rule 16." See, also, 3 Barron & Holtzoff, *supra*, p. 193; 3 Vernon's Kansas Statutes Annotated, Code of Civil Procedure, § 60-256, p. 367. An excellent discussion on partial adjudication is found in 35 B C. J. S., Federal Civil Procedure, § 1214, p. 641.

It seems generally agreed that the purpose of pretrial procedure under Rule 16, and its Kansas equivalent, K. S. A. 60-216, is not to determine controverted issues of fact. (1 A Barron & Holtzoff, Federal Practice and Procedure, § 471, p. 834; 2 Vernon's Kansas Statutes Annotated, Code of Civil Procedure, § 60-216, p. 118.) In similar vein we have held that the trial court should not attempt to decide disputed issues of fact at pretrial conference. (*Connell v. State Highway Commission*, 192 Kan. 371, 388 P. 2d 637; *Green v. Kaesler-Allen Lumber Co.*, 197 Kan. 788, 420 P. 2d 1019.) Moreover, we have said that pretrial proceedings should not be conducted until discovery has been completed. (*Connell v. State Highway Commission*, supra. ) Similar rules have been laid down in connection with motions for summary judgment. (*Brick v. City of Wichita*, 195 Kan. 206, 403 P. 2d 964.)

In the present case discovery proceedings had not been completed when the supplemental memorandum opinion was handed down, for Mrs. Countryman was again deposed the following November. Moreover, it would seem that a determination under K. S. A. 60-256 (*d*) should not be so rigidly applied as to preclude a deponent, acting in good faith, from correcting mistakes made in his testimony, from explaining inconsistencies and from covering in greater detail matters brought out only generally by the questions propounded.

We have examined the summation of plaintiff's deposition testimony as to the purported Richolson contract. As set forth in the record, that testimony was exceedingly brief and so lacking in detail as to invite further clarification concerning the specific terms of the alleged agreement. Under this state of facts we view the rejection of plaintiff's testimony offered at the trial as constituting error.

The court, it is true, ruled that even though a contract were established, plaintiff's claim was barred by the statute of limitations. Whether that might be so would depend, in turn, on what the terms

and provisions of the agreement actually were, as disclosed by all the evidence.

A related contention is found in Mrs. Countryman's statement of points, where she asserts that the trial court erred in deciding her claim to personal property, solely upon the discovery deposition. Since this point is not briefed, we can assume it has been abandoned. We may say, however, that the plaintiff offered no testimony at the trial relating to her claim for personal property, and hence the situation differs significantly from that which obtained in the Richolson claim.

Finally, the plaintiff alleges that the trial court erred in denying her claims for (1) the full undivided interest in the Moline property; (2) a three-fourths (¾) interest in Trail's End; and (3) a one-half (½) interest in the Salt Creek farms.

At the time of Mr. Countryman's demise, his wife, Marie, held title to undivided one-half interests in both the Moline and Trail's End properties and he, himself, had title to the other half interests therein. He also had full title to the Salt Creek farms.

Mrs. Countryman bases her claim to full title in the Moline place on an alleged verbal agreement. She testified, in substance, that her husband told her she could have the property and her brother could live there if she would keep it up; and that she did some repair work, built some fence and insured the place. It is not clear from the record whether this alleged conversation occurred in 1950 or 1959. Be that as it may, the trial court found that plaintiff had failed to establish the alleged agreement. We are frank to say there is considerable evidence in the record tending to cast doubt upon the verity of the Moline claim, and we are in no position to set the finding aside. The test to be applied in determining whether an oral contract has been established with a person since deceased, is clearly outlined in the case of *In re Estate of Shirk*, 194 Kan. 424, 399 P. 2d 850, where we held:

"When an oral contract with a person since deceased is made the basis of an action for specific performance, it is not sufficient that the contract be established by a mere preponderance of the evidence but such evidence must be clear, cogent and convincing." (Syl. ¶ 1.)

In the course of that opinion, we said:

". . . Courts of equity will subject the evidence submitted as proof of such contracts to close scrutiny and the contract must be established by the clearest and most convincing proof, a mere preponderance of the evidence being insufficient. (*In re Estate of Towne*, 172 Kan. 245, 239 P. 2d 824.)" (p. 428.)

Cases are numerous from this jurisdiction where this strict standard of proof has been applied. (See, *In re Estate of Hargreaves,* 201 Kan. 57, 439 P. 2d 378, and authorities therein cited.)

The court's finding on the Moline claim is, in legal parlance, a negative finding. Normally findings of this nature are not overturned by appellate courts, since their means for weighing evidence and testing credibility are severely limited. In *Collins v. Merrick,* 202 Kan. 276, 448 P. 2d 1, we had occasion to venture briefly into the field of negative findings and we held:

"Ordinarily, an appellate court will not set aside a negative finding made by a trial court if the evidence is limited in quantity and its weight and credibility may be questionable, or if the evidence may be disregarded for any reason." (Syl. ¶ 2.)

"A trial court cannot arbitrarily or capriciously refuse to consider the testimony of any witness, but it is not obliged to accept and give effect to any evidence which, in its honest opinion, is unreliable, even if such evidence be uncontradicted." (Syl. ¶ 3.)

For similar statements of the rule, see *In re Estate of Winters,* 192 Kan. 518, 389 P. 2d 818; *In re Estate of Curtis,* 193 Kan. 431, 394 P. 2d 59.

The Trail's End and Salt Creek claims rest on a somewhat different basis. Mrs. Countryman contends that the one-half interest owned by her husband in Trail's End and the full interest owned by him in Salt Creek were purchased from funds jointly accumulated by the two of them after their marirage. Thus, she maintains she is entitled to an additional one-fourth interest in Trail's End and a one-half interest in Salt Creek, by virtue of the provisions contained in their antenuptial agreement.

It is true that the prenuptial contract provided that as to real estate acquired as a result of the joint efforts of Mr. Countryman and his intended bride, Marie, his future wife should receive a half interest upon her husband's death. However, the trial court found that plaintiff had failed to establish a claim to either property.

As to Trail's End, the court pointed out that the evidence clearly established that the Countrymans divided their net earnings equally each year. Mrs. Countryman, herself, testified they never operated under the antenuptial contract during their marirage; that they set the contract aside and never related to it; that under a verbal understanding they divided the property annually, each taking half; and that each had paid one-half the purchase price of Trail's End from their respective checking accounts. Records disclosed

that from 1944 to 1964, Marie received considerably more than half the total income. Trail's End was acquired in 1948, during which year the amount received by Marie far exceeded half the joint income.

The court found that for the year 1948 there had been a division of funds accumulated through the parties' joint efforts and that Mr. Countryman's part of the price paid for Trail's End came from his share of the division. This finding is suported by substantial evidence. Such being the case, the finding may not be set aside. Neither may the judgment denying Marie's claim to Trail's End be overruled.

So far as the Salt Creek farms are concerned, the court found that Mr. Countryman paid the purchase price from income from his own private sources and investments. There is substantial competent evidence to support this finding, also. Accordingly, the findings as to both properties must stand.

No principle in the realm of appellate review is more firmly established than this: that findings made by the trier of facts will not be set aside on review if they are substantially supported by competent evidence. Neither will a judgment be overturned for insufficiency of evidence where there is competent evidence of a substantial nature to sustain it. At this late date, citation of authority on these points is hardly needed, but see cases in 1 Hatcher's Kansas Digest (Rev. Ed.) Appeal and Error, § 507.

That part of the judgment entered by the court below which denies the claims of the plaintiff, Marie Countryman, as to personal property and as to the Moline, Trail's End and Salt Creek properties is sustained. Such parts of the judgment as deny Mrs. Countryman's claim for pasture rent and her claim regarding the Richolson farm are reversed with directions to hear those claims on their merits in accordance with the views expressed in this opinion.