No. 47,602

STATE OF KANSAS, *Appellee*, v. CURTIS JAMES, *Appellant*.

(531 P. 2d 70)

Opinion filed January 25, 1975.

*Richard D. Coffelt*, of Flood, Martin, Coffelt & Flood, of Hays, argued the cause, and *Stephen P. Flood*, of the same firm, was with him on the brief for the appellant.

*Michael H. Haas*, county attorney, argued the cause, and *Vern Miller*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, Curtis James, was found guilty of three criminal charges: (1) assault (K. S. A. 21-3408), (2) battery (K. S. A. 21-3412) and (3) rape, which is defined in K. S. A. 21-3502

(1) (*a*) as "the act of sexual intercourse committed by a man with a woman not his wife, and without her consent when . . . [her] resistance is overcome by force or fear."

The train of events leading to the criminal charges began on what we reasonably may assume was a quiet Sunday evening in Hoxie. Sharon Mong and her twin sisters, Marlette and Marlene, were returning to their father's home after a weekend visit with their mother at Goodland. The date was September 23, 1973, the hour approximately 10 p. m. Sharon was sixteen at the time; the twins a year younger. As the trio drove down the main stem of Hoxie with Sharon at the wheel, they passed two vehicles which were stopped in the middle of the street permitting their occupants to visit. One car was a Ranchero driven by the defendant, Curtis James. Rick Farber drove the second car, which was blue in color, and Robert Meier and Don Moss were passengers in one or the other of the two vehicles.

As the girls' car passed the vehicles, James drove his Ranchero in front of it while Farber pulled his car behind the Mong vehicle, hemming it in. Sharon attempted to pass around the James vehicle ahead of her but James swung the Ranchero back and forth across the street preventing her from passing.

Some distance from town, and apparently beyond the railroad tracks, the four young gallants succeeded in stopping the Mong car on the highway. At this point Marlette was able to crawl out of the car. She ran back to town where she reached the home of a friend and proceeded to spread the alarm. In the meantime, the boys forced Sharon to drive her car into Reuben Rasek's driveway and James drove in behind her, blocking the exit.

A fair summary of what took place in the driveway is that James opened the door of the Mong car, grabbed Sharon by the arms and dragged her, protesting, from the vehicle. Sharon managed to break away, and began running toward Hoxie. James and Meier took after her in the Ranchero, catching up with her near the railroad tracks where they forced her into the truck.

What transpired thereafter, as Sharon relates it, for neither James nor Meier testified, need not be told in detail. It is sufficient to say the two men drove Sharon to the country and into a field where James had intercourse with her in the back of the pickup while Meier held her by the arm. Sharon testified that she was scared, that she screamed and fought, and at one time managed to break free but was recaptured down the road.

A doctor who examined Sharon the same night testified that she had recently had intercourse, that she was upset, that she was crying and that her hair was in disarray. The following morning the doctor examined her wrists and found evidence of bruises encircling them, as though force had been applied to the skin.

Sheriff Kratzer testified that he and Chief of Police Johnson met Mr. Mong at the telephone booth near the E & G Motel about 10:30 or 10:45 p. m.; that James and Meier drove by; that the chief pursued and brought them back; that he, the sheriff, attempted to get James into his car but James resisted, and kept talking and yelling; that finally he had to use his mace to quiet James, at which point James took off, with the sheriff in hot pursuit; that James was brought to bay about a block away and firmly escorted to the sheriff's office.

On January 29, 1974, Mr. James was brought to trial for rape. That trial ended with a hung jury, and a mistrial was declared. On February 15, 1974, the state filed a separate information charging James with two additional offenses, assault and battery. An affidavit by Sharon accompanied the information, setting out the incident which occurred in the Rasek driveway. The court ordered these charges consolidated for trial with the rape charge, and all three charges were tried together in March, 1974. James was convicted on all counts.

Two of the defendant's points relate to the assault and battery charges. James argues (1) the trial court should have instructed that assault and battery are lesser included offenses of forcible rape and that the jury could convict on either the lesser offense or the greater offense, but not both, and (2) conviction on charges of assault and of battery operates as an acquittal of forcible rape. In our judgment neither of these contentions is valid.

We recognize the rationale of *Jarrell v. State*, 212 Kan. 171, 510 P. 2d 127, which defendant cites, but believe it may readily be distinguished. Jarrell was charged in three counts with (1) forcible rape, (2) assault with felonious intent and (3) taking a woman for defilement (under a statute now repealed). The facts alleged in each count were the same. Under those circumstances we said it was clear that Jarrell had been convicted of three crimes arising out of a single incident and that convictions under the last two counts were "barred by former jeopardy." (p. 175.) In the *Jarrell* opinion we cited *State v. Pierce, et al.*, 205 Kan. 433, 469 P. 2d 308, where it was held:

"Generally, a single wrongful act should not furnish the foundation of more than one criminal prosecution." (Syl. ¶ 2.)

"The test to be applied in determining the question of identity of offenses laid in two or more counts of an information is whether each requires proof of a fact which is not required by the others." (Syl. ¶ 3.)

*Jarrell* is not a controlling precedent, however, for here there was more than a single wrongful act; there were two. The assault and battery charges are plainly based on what occurred in the Rasek driveway, not on what subsequently took place in the pickup parked in the pasture. Although the violence in the Rasek driveway may have been one of a series of incidents occurring that night, it was nonetheless separate and distinct, both as to time and place, from the rape that later materialized.

But defendant argues the assault and battery were committed to overcome Sharon's resistance in the course of events eventually leading to the rape and thus were elements of the sexual assault itself. We believe the argument faulty. The attack on Sharon was fully completed at the time it occurred, and might well have been made the basis for assault and battery charges had nothing further happened that night.

Did the trial court err in failing to instruct that simple assault and simple battery were lesser included offenses of rape? We think not. In *State v. Kelley*, 125 Kan. 805, 265 Pac. 1109, the defendant was convicted of attempt to rape. We held:

"Simple assault is not a lesser degree of the offense of rape, or of attempt to rape, as defined by R. S. 21-101, 21-424." (Syl. ¶ 3.)

In the course of its opinion, this court stated, on page 807:

". . . This is not a prosecution under R. S. 21-434 [assault with intent to commit a felony]. It is under R. S. 21-101 [attempts] and 21-424 [rape]. Simple assault is not a degree of that offense; the only offenses under these sections are rape and attempt to rape. . . ."

But even were assault and battery, as defined in current statutes, included within the crime of rape, we believe the attending circumstances of this case were such that no included offense instruction was required.

The trial judge in ruling on post trial motions said that evidence of defendant's guilt was "overwhelming" and was "proved beyond anything remotely close to a reasonable doubt." From our examination of the record we are bound to agree with the court in its assessment of the evidence. In *State v. Mason*, 208 Kan. 39, 42, 490 P. 2d 418, we said the duty of a trial court to instruct on included offenses

"arises only where the omitted instructions are 'clearly required by the evidence' and 'the jury might naturally and probably have convicted of a lesser degree or offense' if they had been given. *State v. Winters*, 81 Kan. 414, 421, 105 Pac. 516." See, also, *State v. Masqua*, 210 Kan. 419, 424, 502 P. 2d 728; *State v. Warbritton*, 211 Kan. 506, 508, 506 P. 2d 1152.

Our rule accords with other authorities. In *State v. Wilson*, 162 S. C. 413, 161 S. E. 104, it was held that where evidence showed assault with intent to ravish if any crime at all had been committed, failure to instruct on simple assault and battery was not error. In *Burnam v. Commonwealth*, 289 Ky. 312, 158 S. W. 2d 131, it was said if uncontradicted testimony showed rape was committed and the defense was alibi, the evidence did not justify an instruction on assault and battery.

Defendant next argues that since he was convicted of assault and battery he stands acquitted as a matter of law of the greater offense of rape. The defendant misconceives the import of the statutes he cites. K. S. A. 21-3107 (2) provides in part as follows:

"Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an *included* crime, but not both. . . ." (Emphasis supplied.)

while K. S. A. 21-3108 reads in part:

"A conviction of an *included* offense is an acquittal of the offense charged." (Emphasis supplied.)

Neither provision is relevant here, for they relate to convictions of included crimes, not to separate offenses. The authorities cited apply only where the accused was found guilty of an offense included in the greater crime for which he was tried. For example, in *State v. Gunzelman*, 210 Kan. 481, 489-490, 502 P. 2d 705, defendant was charged with aggravated battery against a law enforcement officer, a felony, under K. S. A. 21-3415, but was convicted of battery of a law enforcement officer, a misdemeanor, under 21-3413. Conviction of the included misdemeanor charge, we said, would bar subsequent trial for the felony.

The final point raised by defendant concerns a challenge for cause against one of the jurors, a Mr. Moreland. On *voir dire* examination the juror said he had heard talk about the case around the TV store where he worked, but no expression of opinion as to guilt or innocence, or of the purported facts, and he thought his frame of mind was such that he could evaluate the evidence.

When the motion for new trial was heard, the defendant produced a witness, Darrell Allen, who was a third or fourth cousin of the accused and the employer of defendant's brother-in-law. Allen testified he was in the TV shop when word was received that the first trial ended in a hung jury; that Moreland said he didn't see how a jury could come to that decision on a case of that sort; that Moreland kept talking and said he was picked for jury duty next term and "subsequent conversation didn't leave any doubt in my (Allen's) mind that he (Moreland) thought Curtis James should have been guilty" although Moreland did not say he could not be an impartial juror. Neither did Allen remember Moreland saying anything about what he would do if he were on the next jury, but Allen thought he was serious.

In overruling the motion for new trial, Judge Birney made a specific finding that counsel for James "did an extremely able job in his Voir Dire (sic) examination" and that he had "kept particularly alert because of the possibility of this case having been pretty thoroughly discussed."

Our rule is that the decision of the trial court as to a juror's qualification to sit in a case will not be disturbed on appeal unless his disqualification appears as a matter of law or there has been an abuse of discretion. (*State v. Coleman,* 206 Kan. 587, 596, 481 P. 2d 1008; *State v. Dearman,* 203 Kan. 94, 98, 453 P. 2d 7, cert. den., 396 U. S. 895, 24 L. Ed. 2d 173, 90 S. Ct. 194; *State v. Williams,* 182 Kan. 468, 471, 322 P. 2d 726.)

We are unable to say the trial court abused its discretion in refusing to grant a new trial on the basis of Moreland's alleged disqualification. In assessing the worth of Allen's testimony and the weight it should be accorded, the trial judge occupied an advantageous position. He was able to observe Moreland's demeanor on the stand, the manner in which he testified, his tone of voice, his facial expression and his appearance in general. (*Collins v. Merrick,* 202 Kan. 276, 280, 448 P. 2d 1.) The trial judge was entitled, also, to take into consideration in determining credibility, Mr. Allen's relationship to the defendant and his connection with members of defendant's family. In *Morton v. State,* 1 Kan. 468, 472, this court said:

". . . It is the mind of the court which must be satisfied that the challenged juror is free from bias and prejudice, and not that of the juror himself. . . ."

It may be noted that Moreland was not reported as having said what he would do were he on the jury, or that he could not reach an impartial verdict or could not be an impartial juror. The record does not indicate why Mr. Moreland was not produced at the motion for new trial or why the trial court did not call him in for further questioning. We can only assume that the trial judge placed little if any credence in Allen's testimony, but believed Moreland had spoken truthfully at the time of his *voir dire* examination. In the case of *In re Estate of Curtis*, 193 Kan. 431, 436, 394 P. 2d 59, we said that while a court, as the trier of facts, may not arbitrarily or capriciously refuse to consider the testimony of any witness, it is not obligated to believe or accept as true the testimony of any witness which it honestly believes to be unreliable, even though it may be uncontradicted. Disbelief of testimony given by a witness may have resulted from his appearance and demeanor, which an appellate court never has an opportunity to observe. ( *Kallail v. Solomon*, 146 Kan. 599, 602, 72 P. 2d 966; *In re Estate of Johnson*, 155 Kan. 437, 439, 125 P. 2d 352. )

Judgment affirmed.